**In re KEITH et al.**

**No. 10322.**

Circuit Court of Appeals, Fifth Circuit.

June 9, 1942.

J. E. Wilkinson, Jr., of Selma, Ala., for petitioners.

Thomas H. Fox, Sp. Atty., Lands Division of Birmingham, Ala., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

PER CURIAM.

This comes up on a show cause order issued upon the petition of Ada Keith and Bettie Keith, landowners in Dallas County, Alabama for relief in the nature of a mandamus.[1] Brought against Honorable T. A. Murphree, U. S. District Judge for the Northern District of Alabama, it was to require him (1) to enter an order allowing petitioners and the 22 tenants their petition names, to withdraw $21,526 deposited by the United States in the registry of the court, with the declarations of taking of two tracts of land, of theirs, and (2) requiring him to proceed to appoint commissioners to ascertain, fix, and award, the just compensation to be paid therefor. From the petition and the answer of respondent, the following facts sufficiently appear. On April 19 and May 2nd, 1941, the United States filed in the United States District Court for the Northern District of Alabama, two declarations of taking, and two petitions numbered 417 and 420 for condemnation of respectively 6,263 and 163.3 acres of land including therein the parcels belonging to petitioners, the deposits for which are the subject of this rule. At the same time there was paid into the court in #417 the sum of $98,540, as the estimated just compensation for the taking of the 24 separate tracts of land involved there and in #420 involving two

---

[1] Cf. In re Maxwell, 5 Cir., 100 F.2d 749.

tracts, $3215.00. Tract 4 of #417 belonged to petitioners and the estimated compensation paid in for it was $21,200. In #420, one of the tracts belonged to petitioner and the estimated compensation paid in for it was $360.00.

On July 14, 1941, petitioners filed their answers in said causes denying that the sums deposited for their tracts were just compensation therefor and claiming that they had a value in excess of $100,000. On the same day they filed a petition to be allowed to withdraw the deposited sums or such part of them as to the court might seem just and proper without prejudice to their right to claim more in the trial allowed by law. On or about the 14th day of August, 1941, petitioner's title to the two tracts was approved by the attorney for the government, but no action was taken on their petition for the withdrawal of the sums deposited as estimated compensation for their lands, nor were commissioners appointed or any other action taken in court to bring the condemnation proceedings to a close. On February 27, 1942, petitioners and some but not all of those named in the present petition as tenants filed two motions, one alleging that they were entitled to withdraw the funds deposited on account of the taking of their lands, prayed an order directing the Clerk to forthwith pay said sums to them. The other, was for the appointment by the court of commissioners to ascertain, fix, and award, the just compensation to be paid for their two tracts of land. The government opposing both motions, the first because; (1) the amount due to each of the parties entitled, had not been determined by agreement or by a court order; the second because petitioners' tracts were only two of the many tracts involved in the condemnation; (2) settlements as to each of the tracts making up the whole of the large tract under condemnation are going forward as promptly as possible and many of them have already been settled and it is expected that soon all of them will be disposed of out of court; and (3) that it is not reasonable to order separate commissioners and separate proceedings for each of the tracts but rather one set of commissioners should be appointed for all of the undisposed of tracts.

Pointing out that in the event, upon the final determination of the cause, an award should be found in excess of the amount deposited, the excess will bear interest at 6% per annum from the time of taking and that petitioners would not be damaged by delay, the prayer was that the appointment of commissioners be denied. Set for hearing and heard almost immediately by the respondent,[2] the motions were, on March 12, 1942, denied for the reasons and upon the considerations set out by respondent in his answer[3] to the show cause

---

[2] At the hearings, which were most informal, the following proceedings occurred. Petitioners, insisting that the parties named in their motions as tenants, were all of them, that their counsel represented both petitioners and tenants, and that they did not anticipate any difficulty after the checks were made out as requested in settling all matters between them and their tenants, sought to have the Clerk draw a check for the full sum payable jointly to petitioners and the named tenants, the check to be delivered to their counsel. Asked if an agreement had been reached as to the divisions to the tenants, they answered, "No, but that no difficulty was anticipated in arriving at one." Counsel for the government objected to the drawing of the check and urged that before any payments were ordered there should be a determination which should be either by a settlement and release or by a hearing in the court. Finally he offered, with permission of counsel, for movants, to undertake to negotiate a settlement with all the tenants and procure releases

from them, counsel for movants, objecting that they did not want tenants to sign releases because if the condemnation resulted in a larger award they expected the tenants to receive additional amounts, refused to accede to this request and declined to enter upon a hearing and determination of the amounts due the tenants. On the motion for appointment of commissioners counsel for the government stated; that settlements had been made with a large portion of those owning tracts involved; that he was giving the matter preferred attention and expected before long to dispose finally by settlement, of all of the tracts, and that if commissioners were appointed as to each separate tract and separate proceedings were held as to each, it would disrupt the docket of the court and present insuperable difficulties.

[3] "At the conclusion of the hearing, respondent took the matter under advisement and thereafter, after considering the same fully and after considering the statements of counsel made in open court and the law of the case, respond-

order. In his answer here, while respectfully deferring and submitting himself to the judgment of the court, respondent urges that upon the facts he should be discharged from the rule. He insists that this should be done in regard to the motion to require payment because; he was under not a ministerial but a discretionary duty to determine the amounts to be paid to each of the parties entitled thereto; he stood and stands ready to give a prompt and speedy hearing on that issue and the parties declining it, his denial of the motion was not an abuse but an exercise of his discretion, both because under the law it was his duty to determine the amounts that should be paid and to whom and under the facts it is clear that there is an uncertainty both as to who are the tenants entitled to payment and as to what amounts should be paid, and this should be cleared up before an order of payment should be made. He insists that it should be done as to the motions to appoint commissioners because he was here exercising not a ministerial but a discretionary duty both in respect of his docket in general and in, respect of the circumstances of the particular case, and having exercised that discretion, his action cannot be reviewed or controlled by mandamus.

■■ In view of the terms of the act,[4] and of its generally understood purpose that persons whose property is condemned should, while the condemnation proceedings are going forward, be as near as may be protected from undue hardship from the taking, it would seem that in the exercise of a sound discretion some plan could have been earlier worked out by which the amounts in question here could have been paid to those entitled to receive them. We are convinced that some arrangements could and should have been made to bring the matters more speedily to a conclusion in this and in other cases of money so deposited, particularly are we of the opinion that the deposited moneys may not be withheld and their payment delayed as a part of any plan or program to induce or bring about final settlement of the condemnation proceedings. We cannot therefore, accept as valid reasons for the more than one year's delay in paying over the money, the contentions of the government's attorneys that the docket of the court is congested, that there are many cases to be tried, and that the rights of

---

ent, being of the opinion that he was vested with discretion as to the manner in which the distribution should be made under Title 40, Sec. 258a, reached the conclusion that the government was correct in its contention that an order should not be made directing the Clerk to draw a check payable to the order of Ada H. Keith and Bettie Keith and the other named tenants, jointly, particularly in view of the fact that Counsel for the movants had stated in open court that no agreement had been reached as to a division of said moneys among the payees of the check, and the possibility that no such agreement could be reached. Respondent was of the opinion that the proper procedure was to ascertain and fix the value of the interest of each tenant definitely, either by negotiation or by a hearing, and to pay and satisfy in full the interest of each tenant before any amounts were paid to the said Ada H. and Bettie Keith. On the motion for appointment of commissioners, respondent was of the opinion that the best interests of all of the land owners in all of the suits involved would not be furthered by the appointment of separate commissioners to value the separate tract of land purported to be owned by Ada H. Keith and Bettie Keith; that confusion would result if such an order were made; that every land owner would be free to come in and request the appointment of commissioners for the valuation of his separate tract and that the business of the court could not be dispatched in an orderly manner if such order were made.

"In view of these considerations, the respondent entered an order overruling both motions filed by said Ada H. Keith and Bettie Keith."

4 "Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of estimated compensation stated in said declaration, [the land taken] shall vest in the United States of America, and * * * shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto * * *. Upon the application of the parties in interest, the court may order that the money deposited in the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in said proceeding." 40 U.S.C.A. § 258a.

persons whose property has been taken must wait upon the convenience of the government's attorneys in making settlements.

■ We agree with respondent however that upon the record before us there has been no failure on his part to act and no abuse of his discretion in acting with regard to the payment of the moneys; and that neither a writ in the nature of mandamus nor directions in lieu thereof, such as were issued in Maxwell's case, should issue, for it appears from the record not that the district judge has refused to act or has abused his discretion in acting but merely that he has acted in a manner not acceptable to petitioners.

■ We think it plain that the statute, in providing that the district judge may order payment of moneys deposited in connection with the declaration of taking, intended to confer upon him a discretion to be justly exercised in favor of avoiding by expedition rather than imposing by delay in distribution undue hardships upon persons dispossessed of their lands, and that we have the power to compel distribution if the district judge arbitrarily and without reason refused to do so. It is quite plain though that the statute confers a discretion on the district judge, and that the facts of this case make out neither a case of refusal by respondent to act, or of abuse of his discretion, in regard to the distribution of the funds.

■ As to the request for the appointment of commissioners, we think that the broad implications of the government's opposition to the request, that the government may join a multitude of tracts in one proceeding and may decline to apply for the appointment of commissioners for the whole or any part until it has exhausted every possibility of settlement with the owners of the several tracts, must be rejected. For a speedy trial and justice in the cause at the end of it is still as clearly the right of the citizen in a court proceeding, when the controversy is with his government as when it is with a private citizen. It may not therefore be successfully contended that individuals may be dragnetted into condemnation suits en masse and because of the size of the dragnet made to wait upon administrative pleasure for trial until settlements and attempts at settlement, going on piecemeal, have been exhausted. Nor is it a sound

reason for delaying the trial of such suits that dockets may be congested, for they are in their nature preferred proceedings and it is the duty of the government after instituting them, to leave no reasonable step untaken to bring them to as speedy a conclusion as is reasonably possible.

■ We cannot say however, on the record, that the refusal of the district judge to appoint separate commissioners here was arbitrary and unreasonable and we deny the motion for a mandatory order or direction in this respect also.

The petition as a whole is denied.